UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JAMES A. PENHALLEGON,

               Plaintiff,

v.                                       Case No. 16-cv-225-pp

GUY NETT,
SIR FINNIE, and
RICHARD KUGLER,

               Defendants.

---

**DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 27)**

---

The plaintiff, who is representing himself, filed this lawsuit under 42 U.S.C. §1983, alleging that his constitutional rights were violated when the defendants failed to protect him from an attack by his cellmate. Dkt. No. 1. On November 21, 2016, the defendants filed a motion for summary judgment. Dkt. No. 27. For the reasons discussed below, the court will grant in part and deny in part the defendants' motion.

## I.    RELEVANT FACTS[1]

The plaintiff is an inmate in the Wisconsin prison system. Dkt. No. 29 at 1. During the relevant times, he was incarcerated at the Kenosha Correctional

---

[1] The court takes the facts from the "Defendants' Proposed Findings of Fact," dkt. no. 29, and "Defendants' Response to Plaintiff's Proposed Findings of Fact," dkt. no. 41. The facts are undisputed unless otherwise noted.

Center. Id. The Wisconsin Department of Corrections (DOC) employed defendant Sir Finnie as the Food Services Supervisor at Kenosha. Id. at ¶4. The DOC employed defendants Guy Nett and Richard Kugler as Correctional Sergeants at that facility. Id. at ¶7, 10.

Finnie was responsible for the overall functioning of Kenosha's food services, including supervising kitchen and food production staff, overseeing the ordering and supply of food service items, and managing Kenosha's meal menu. Id. at ¶5. Nett's and Kugler's duties included monitoring the various housing units and main lobby, as well as supervising inmates. Id. at ¶8, 11. One of Nett's assigned job duties was overseeing inmate room changes; any sergeant, however, was authorized to make an inmate room change. Id. at ¶9.

Sometime prior to the altercation between the plaintiff and his cellmate John Dawley, the plaintiff asked Finnie if he could room with inmate Timothy Lawton. Id. at ¶13. The plaintiff and Lawton worked in the kitchen under Finnie's supervision. Id. Finnie understood that the two were friends. Id. *Finnie* asserts that the plaintiff never told him that he believed he was in danger from Dawley; *the plaintiff* asserts that he told Finnie that he believed he and Dawley would end up in a violent conflict if they weren't separated. Id. at ¶16.; Dkt. No. 41 at ¶1, 2.

Because Finnie did not have the authority to assign rooms or cellmates, Finnie sent an email to Kevin Madden, asking that the plaintiff and Lawton be allowed to room together. Dkt. No. 29 at ¶14, 17. Finnie's email makes no

mention of any threat posed by Dawley to the plaintiff. Dkt. No. 30-2. Madden told Finnie to contact Nett about cell assignments, so Finnie emailed the request to Nett. Dkt. No. 29 at ¶15. Finnie's email to Nett also makes no mention of any threat posed by Dawley to the plaintiff. Dkt. No. 30-3.

The plaintiff spoke to Nett about a room change, and Nett told the plaintiff to fill out an interview/information request. Dkt. No. 29 at ¶19. The plaintiff asserts that he spoke to Nett about his concerns, and he sent several written requests to Nett[2] explaining that he and Dawley were not getting along and that he believed Dawley was going to get violent with him. Dkt. No. 41 at ¶3, 4. The plaintiff states that Nett did not respond to his requests. Id. at 3.

Nett asserts that he received only one interview/information request[3] about two weeks before the altercation between the plaintiff and Dawley, and states that the request did not indicate that the plaintiff believed he was in danger. Dkt. No. 29 at ¶21. Nett indicates that he did not grant the plaintiff's request for a room change because the request did not provide information necessitating a change. Id. at ¶24.

After denying the plaintiff's request, Nett received Finnie's email asking that the plaintiff be allowed to room with Lawton. Id. Nett believed that the plaintiff was trying to circumvent security staff decisions by making the request

---

[2] The plaintiff does not provide copies of the written requests.
[3] Nett does not provide a copy of the interview/information request; Kenosha did not have a policy requiring staff to maintain copies of such requests. Dkt. No. 29 at ¶20.

3

through Finnie. Id. at ¶25. Because the email contained no reason necessitating the change, Nett again denied the request. Id.

The plaintiff asserts that, in addition to Nett and Finnie, he also spoke to Kugler on several occasions about wanting to change rooms because he and Dawley were not getting along. Dkt. No. 41 at ¶5. Kugler does not dispute that the plaintiff asked to change rooms; Kugler asserts, however, that the plaintiff never told him that he felt like he was in danger from Dawley. Dkt. No. 29 at ¶27. Kugler states that in response to the plaintiff's requests, Kugler often offered the plaintiff the option of changing cells based on which inmates were being released that week. Id. at ¶30. Kugler states that the plaintiff always declined to move to the available cells. Id. The plaintiff disputes that Kugler ever offered him the option to move to a different cell. Dkt. No. 41 at ¶7.

On April 12, 2015, the plaintiff and Dawley were in an altercation. Dkt. No. 29 at ¶35. The plaintiff maintained (in his opposition brief) that Dawley hit him from behind. Dkt. No. 38 at 2. Both inmates were written a conduct report charging them with assault. Dkt. No. 29 at ¶35. The inmates provided different accounts about who was the initial aggressor, but the physical evidence showed that the plaintiff had a cut on his forehead and that Dawley's shirt was soaked in blood. Id. at ¶36.

## II. DISCUSSION

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B. <u>Failure to Protect</u>

In its screening order, the court first allowed the plaintiff to proceed on a claim that Finnie, Nett and Kugler violated his Eighth Amendment right against cruel and unusual punishment when they failed to protect him from Dawley. Dkt. No. 6 at 7. To sustain a failure-to-protect claim, a plaintiff must show two things: (1) the inmate must demonstrate that he was "incarcerated under conditions posing a substantial risk of serious harm," and (2) he must demonstrate that the defendants acted with "deliberate indifference." <u>Farmer v. Brennan</u>, 511 U.S. 825, 833-34 (1994). In other words, the plaintiff must show that being housed in the same cell with Dawley posed a "substantial risk of serious harm," and that Finnie, Nett, and Kugler were deliberately indifferent to that risk. <u>Morris v. Ley</u>, 331 Fed. App'x 417, 419 (7th Cir. 2009). A general risk of violence is not enough; the plaintiff must prove that the defendants had actual knowledge of impending harm as a result of his complaints to them about a specific threat to his safety and that, despite this knowledge, they failed to take reasonable measures to prevent that harm. <u>Id</u>. (citations omitted).

   *1. Sir Finnie*

The plaintiff asserts that he told Finnie that he was afraid Dawley was going to harm him; Finnie disputes this, asserting that the plaintiff asked only that he be allowed to room with his friend, without any mention of Dawley. That discrepancy constitutes a genuine dispute about whether Finnie had actual knowledge of impending harm—an issue of material fact.

6

The fact that there is an issue of material fact in dispute, however, does not end the inquiry. To prevail on the failure to protect claim, the plaintiff also must demonstrate that Finnie was deliberately indifferent to the risk to the plaintiff. The court finds that the plaintiff has not presented any evidence that would allow a jury to reasonably conclude that Finnie was deliberately indifferent to the risk of harm to the plaintiff.

Even assuming that the plaintiff did inform Finnie that he was afraid Dawley would hurt him (which the court assumes because the plaintiff is the non-moving party, and the law requires the court to draw all reasonable inferences in his favor), the plaintiff does not dispute that Finnie emailed two different sergeants to request that the plaintiff be allowed to room with the inmate of his choice. This is all that Finnie could do. It is undisputed that Finnie had no control over the plaintiff's cell assignment, and the Seventh Circuit has explained that "no prisoner is entitled to insist that one employee do another's job." Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009). The plaintiff complains that Finnie's request to Nett was insufficiently detailed because it did not mention the threat Dawley posed to the plaintiff. It was not Finnie's job, however, to convince Nett that the plaintiff should be moved, or to advocate for the plaintiff's desired outcome. Finnie forwarded the plaintiff's request to Nett, leaving it to Nett to do Nett's job and investigate whether the transfer was necessary.

Because Finnie could not make the decision to move the plaintiff himself, and because he forwarded the plaintiff's request to a person (actually, to two people) who could make that decision, the court must grant summary judgment in favor of Finnie, and dismiss Finnie as a defendant.

  *2. Guy Nett and Richard Kugler*

The plaintiff asserts that he told Nett and Kugler on multiple occasions that he was afraid Dawley posed a threat to him; Nett and Kugler deny that the plaintiff ever complained about Dawley. The plaintiff also asserts that Nett denied multiple requests for a cell transfer and that Kugler never offered a cell transfer. Nett states that he denied the requests for a cell transfer because the plaintiff never provided a reason necessitating one, and Kugler states that, even though he knew nothing about Dawley, he still offered open cells to the plaintiff on a regular basis. Again, these are genuine disputes as to issues of material fact.

Unlike Finnie, Nett and Kugler had the authority to transfer the plaintiff. The court finds that, if a jury were to credit the plaintiff's version (that he complained about Dawley but Nett and Kugler ignored him), that jury could reasonably conclude that Nett and Kugler violated the Eighth Amendment by failing to protect the plaintiff from the threat posed by his cellmate. Because there are genuine disputes as to these issues of material fact, the court will deny Nett's and Kugler's motions for summary judgment, and leave to a jury

the determination of whether they violated the defendant's Eighth Amendment rights..

C. Negligence

In its screening order, the court allowed the plaintiff to proceed on a state law negligence claim against Finnie, Nett and Kugler. Dkt. No. 6 at 7. In their motion for summary judgment, the defendants argue that the court must dismiss the plaintiff's negligence claim because he failed to serve the attorney general with a written notice of the claim as required by Wis. Stat. §893.92. The plaintiff did not respond to the defendants' argument. In fact, he did not mention his negligence claim at all in his response materials.

The court finds that, because the plaintiff failed to comply with the requirement in Wis. Stat. §893.92 that a plaintiff serve the attorney general with a notice of claim prior to filing a lawsuit, and because the plaintiff has submitted no evidence in support of the state-law negligence claim, the court must grant summary judgment in the defendants' favor, and dismiss those claims.

## III. CONCLUSION

The court **GRANTS** the defendants' motion for summary judgment as to defendant Sir Finnie. Dkt. No. 27. The court **DISMISSES** Sir Finnie as a defendant.

The court **GRANTS** the defendants' motion for summary judgment as to defendants Guy Nett and Richard Kugler on the plaintiff's state-law negligence

claims. Dkt. No. 27. The court **DISMISSES** the plaintiff's negligence claims against the two remaining defendants.

The court **DENIES** the defendants' motion for summary judgment as to defendants Guy Nett and Richard Kugler on the plaintiff's failure-to-protect claims. Dkt. No. 27.

The court will attempt to recruit an attorney to represent the plaintiff on his surviving claims. Once it has found counsel for the defendant, the court will confer with the parties regarding scheduling a trial or other proceedings.

Dated in Milwaukee, Wisconsin this 31st day of August, 2017.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**United States District Judge**